JAMES J. AND GERALDINE R. DWIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dwight v. Commissioner
Docket No. 5964-71
United States Tax Court
T.C. Memo 1974-193; 1974 Tax Ct. Memo LEXIS 126; 33 T.C.M. (CCH) 832; T.C.M. (RIA) 74193; July 29, 1974, Filed. James J. Dwight, pro se. Dennis DeBerry, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $43,638.99 deficiency in petitioner's 1968 Federal income tax. The issues to be decided are: 1. Whether petitioner-husband, a one-third shareholder in a corporation, received one-third of the assets of the corporation in exchange for his stock on liquidation of the corporation, or, as petitioners contend, a lesser amount. 2. The fair market value on the date of liquidation of all the assets distributed to petitioners in complete liquidation. FINDINGS OF FACT Petitioners, husband and wife, lived in Phoenix, Arizona when they filed their petition herein. They filed their joint 1968 Federal income tax return with the Western Regional Service *127 Center at Ogden, Utah. Hereinafter, "petitioner" shall refer only to the husband, James J. Dwight. Big Bend Water Corporation (hereinafter "Big Bend") was an Arizona public utility corporation. It provided water to customers in and around Bullhead City, Mohave County, Arizona, pursuant to a certificate of convenience and necessity issued by the Arizona Corporation Commission. During 1968 petitioner owned one-third of Big Bend's stock and Jack R. Foster owned the remaining two-thirds. Petitioner was secretary and Mr. Foster was president of Big Bend.
On November 4, 1968 the stockholders of Big Bend were notified that a special shareholders meeting would be held on November 29, 1968, to vote on a proposed dissolution of the corporation. On December 6, 1968, both of the shareholders voted to adopt a plan of complete liquidation "by the distribution of the corporate assets to the stockholders and the sale of said assets by the stockholders in accordance with section 337." Petitioner has conceded that section 337 [1] is not applicable, and that a taxable liquidation under section 331(a) (1) [2] occurred upon the distribution of Big Bend's assets to its shareholders in exchange *128 for their stock. The liquidation of Big Bend took place on December 6, 1968. On November 7, 1968, petitioner and Mr. Foster as shareholders of Big Bend entered into an Agreement with Citizens Utilities Company (hereinafter "Citizens"), a Delaware corporation authorized to do business in Arizona, to sell to Citizens the assets of Big Bend (except cash and receivables) which they were to receive upon Big Bend's liquidation. The purchase price stated in the Agreement was $637,597.36 plus actual cost of materials and supplies and the then value of tools and equipment. Citizens could rescind the Agreement if the water service rates to be established by the Arizona Corporation Commission in a rate increase proceeding then pending before the Commission did not produce a 7 percent rate of return on the "original cost *129 rate base." The purchase price was payable $75,000 at closing and the balance within 30 days after the Arizona Corporation Commission's order in the pending rate increase proceeding became final or January 2, 1969, whichever was later. Closing was to take place not later than 30 days after the Commission's decision setting interim rates and its approval of the sales contract. On December 2, 1968, petitioner, Mr. Foster and Big Bend filed an application with the Arizona Corporation Commission requesting approval of the Agreement and an order transferring Big Bend's certificate of convenience and necessity to Citizens. This application was approved on December 20, 1968. On December 5, 1968 the Arizona Corporation Commission granted an interim rate increase. On December 31, 1968, the Agreement of November 7, 1968 was amended in part as follows: (a) Citizens' right to rescind the Agreement was eliminated, and instead the purchase price of $637,597.36 was to be reduced by an amount equal to 1.15 times the difference between $558,000 and the "original cost rate base" as determined by the Arizona Corporation Commission in the pending rate increase proceeding, if such base was less *130 than $558,000. (b) The amount of the purchase price payable at closing was increased from $75,000 to $150,000, and the unpaid balance of the purchase price was to bear interest at 6 percent from and after the later of the issuance of the Commission's final order in the pending rate case or 90 days after the closing. On December 31, 1968, petitioner and Mr. Foster executed (i) a Bill of Sale transferring the personal property of Big Bend covered by the Agreement and (ii) a Warranty Deed transferring the real property covered by the Agreement to Citizens. On the same date Citizens paid petitioner and Mr. Foster $150,000. Petitioner received one-third of this amount and Mr. Foster received two-thirds. On March 20, 1969 the Arizona Corporation Commission determined: 1. That the original cost of the utility plant in service as of December 31, 1968 is $594,044, and the original cost rate base of the utility plant depreciated for the same date is $566,353. 2. The reconstruction cost new of the utility plant in service, as of December 31, 1968 trended by the Commission Staff is $652,953, and the reconstruction cost new depreciated rate base is $590,825. 3. The fair value *131 rate base for the utility plant in service on December 31, 1968 after the deduction of advances for construction and the addition of working capital totals $581,223. The Commission further determined that the former rates did not produce a fair return on the fair value of the utility plant in service and ordered the company to charge the following rates effective April 1969: $4.50 for the first 2,000 gallons of water per month. $0.50 per thousand for all gallonage in excess of 2,000 gallons per month. On March 31, 1969, Citizens filed an application for rehearing with the Arizona Corporation Commission arguing that the rates provided in the March 20, 1969 decision did not provide a greater than 4.33 percent return on the "fair value rate base" of $581,233 determined in the Commission's Opinion and Order, and that a fair return would be not less than 7.5 percent on the "fair value rate base." The Commission denied Citizens' application for rehearing, whereupon Citizens took the matter to the Maricopa County Superior Court. The Superior Court held that the rate of return of approximately 4.33 percent on the "fair value rate base" was unreasonable and confiscatory. Thereafter *132 the Arizona Corporation Commission by Order dated May 29, 1969 ordered Citizens to charge the following rates effective June 1969: $6.00 for the first 4,000 gallons of water per month. $0.80 per thousand for all gallonage in excess of 4,000 gallons per month. In July 1969, Citizens paid petitioner and Mr. Foster $498,850.26, the balance due under the Agreement of November 7, 1968. ULTIMATE FINDINGS OF FACT 1. Petitioner received one-third of the assets of Big Bend in exchange for his stock upon liquidation of Big Bend. 2. The fair market value of the assets of Big Bend on December 6, 1968 was $580,000. OPINION Petitioner owned one-third of the stock of Big Bend Water Corporation and was its secretary. Mr. Foster owned two-thirds of the stock of Big Bend and was its president. Big Bend was liquidated on December 6, 1968. Petitioner concedes that the liquidation was a taxable event and section 331(a) (1) applies to it. Section 331(a) (1) provides that amounts distributed in complete liquidation of a corporation shall be treated as full payment in exchange for the stock of the corporation. Petitioner and Mr. Foster each exchanged their stock for all the assets *133 of Big Bend, and thereafter sold those assets (except cash and receivables) to Citizens Utilities Company. Petitioner is taxable in 1968 on the excess of the assets he received over his basis in the stock of Big Bend plus any liabilities he assumed. The issues herein are (i) whether petitioner received less than one-third of Big Bend's assets in accordance with an earlier agreement between petitioner and Mr. Foster and (ii) what was the fair market value of Big Bend's assets on December 6, 1968. Petitioner claims that he and Mr. Foster had an oral agreement whereby petitioner received $19,543 less than one-third of the assets of Big Bend and Mr. Foster received $19,543 more than two-thirds of the assets of Big Bend on its liquidation. Respondent contends that petitioner has failed to prove that he received any less than one-third of Big Bend's assets, and we agree. Petitioner acknowledges that he was a one-third shareholder of Big Bend and all documentary evidence introduced in this case corroborates that fact. However, there is no documentary evidence to establish that petitioner received $19,543 less than one-third of the assets of Big Bend in exchange for his stock in *134 liquidation of the corporation, or that Mr. Foster received or was entitled to receive $19,543 more than two-thirds of those assets in exchange for his stock. Petitioner introduced no checks, deposit slips, or other documentary evidence to substantiate his testimony and provided no clear or convincing explanation of why the litigation distribution was disproportionate. Testimony in this case is directly conflicting concerning the $19,543. The revenue agent who audited petitioner's return also audited the returns of Big Bend and Mr. Foster. The revenue agent testified that at no time during the audit of any of these three returns was he told by petitioner, Mr. Foster or Mr. Foster's accountants that petitioner received $19,543 less and Mr. Foster $19,543 more than their one-third and two-thirds interest, respectively, in Big Bend's assets. The records of Big Bend also failed to show any disparity. Only after the statute of limitations had run on his 1968 return did Mr. Foster clearly state that he had received $19,543 more than two-thirds of his assets of Big Bend. The Court, in considering Mr. Foster's and petitioner's testimony and their demeanor on the witness stand, did *135 not find their testimony credible. Petitioner, who has the burden of proof, did not place in evidence the checks paid by Citizens in July, 1969, or his own bank deposit receipts, or any of the other evidence which would surely have been introduced if it corroborated petitioner's claims. Petitioner's failure to call Mr. Foster's accountants to testify cast further doubt on the story. Petitioner's testimony is inconsistent with the facts disclosed to the revenue agent. Petitioner's return for 1968 as filed made no mention of the $19,543 in issue, but represented that petitioner was entitled to one-third of the assets of Big Bend and the sales proceeds therefrom. Considering all the evidence, we conclude that petitioner has failed to carry his burden of proof with respect to this issue, and we have found as a fact that petitioner received one-third of the assets of Big Bend in exchange for his stock upon the corporation's liquidation on December 6, 1968. The second issue is the fair market value of the assets of Big Bend at the time of its liquidation. Respondent contends that the fair market value of the assets of Big Bend on December 6, 1968 was the sales price of those assets *136 received by the shareholders from Citizens in accordance with the contract of sale (Agreement) dated November 7, 1968. However, as petitioner points out, Citizens had a right to rescind the Agreement if the water service rates ultimately established by the Arizona Corporation Commission in a pending rate case initiated by Big Bend did not produce a 7 percent rate of return on the "original cost rate base." The Agreement was amended on December 31, 1968, by removing Citizens' right to rescind the Agreement and substituting an indefinite price, namely, that the purchase price of $637,597.36 was to be reduced by an amount equal to 1.15 times the excess, if any, of $558,000 over the "original cost rate base" as determined by the Arizona Corporation Commission in the pending rate case. Ultimately, Citizens paid the full $637,597 (plus costs of supplies and the depreciated value of tools and equipment). The various rate bases determined by the Arizona Corporation Commission are not necessarily the same as the fair market value of the assets of Big Bend. For example, in its Opinion and Order of March 20, 1969, the Commission found that the original cost rate base of Big Bend's plant depreciation *137 as of December 31, 1968 was $566,353; that the reconstructed cost new depreciated rate base was $590,825; and that the fair value rate base less advances for construction plus working capital was $581,223. Valuation is at best an imprecise matter. Considering all the evidence presented herein, we have found as a fact that the value of the assets of Big Bend on December 6, 1968 was $580,000, and that petitioner received one-third of these assets, or $193,333.33. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS. (a) General Rule. - (1) Complete Liquidations. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. * * * ↩